**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DAVID PILL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TRIBUNE MEDIA COMPANY, PETER M. KERN, BRUCE A. KARSH, CRAIG A. JACOBSON, ROSS LEVINSOHN, PETER E. MURPHY, LAURA R. WALKER, SINCLAIR BROADCAST GROUP, INC., and SAMSON MERGER SUB INC.,<br><br>Defendants. | Civil Action No. ____________<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff David Pill ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on May 8, 2017 (the "Proposed Transaction" or "Merger"), pursuant to which Tribune Media Company ("Tribune" or the "Company") will be acquired by Sinclair Broadcast Group, Inc. ("Parent") through its wholly owned subsidiary, Samson Merger Sub Inc. ("Merger Sub") (collectively, "Sinclair").

2. On May 8, 2017, Tribune's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Sinclair. Pursuant to the terms of the Merger Agreement, Sinclair will purchase each issued and outstanding share of Tribune Class A and Class B common stock for

$35.00 in cash and 0.2300 shares of Sinclair Class A common stock (the "Merger Consideration").

3. On July 3, 2017, Defendants filed a Registration Statement on Form S-4 (the "S-4") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction (the S-4 is dated June 30, 2017 but was not filed until July 3, 2017). As described herein, the S-4 omits material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 140.14a-9 ("Rule 14a-9") promulgated thereunder.

4. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' wrongdoing described herein.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, and maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Tribune common stock.

9. Defendant Tribune is a Delaware corporation and maintains its principal executive offices in Chicago, Illinois. Tribune's common stock is listed on the NYSE under the symbol "TRCO."

10. Defendant Peter M. Kern ("Kern") serves as Tribune's Interim Chief Executive Officer ("CEO"), and has been a member of the Board since October 2016. Kern served on the Board's Transaction Committee in connection with the Proposed Transaction.

11. Defendant Bruce A. Karsh ("Karsh") is the Chairman of the Board and has served as a Board member since 2012.

12. Defendant Craig A. Jacobson ("Jacobson") has been a member of the Board since 2012.

13. Defendant Ross Levinsohn ("Levinsohn") has been a member of the Board since 2012.

14. Defendant Peter E. Murphy ("Murphy") has been a member of the Board since 2012 and served on the Board's Transaction Committee in connection with the Proposed Transaction.

15. Defendant Laura R. Walker ("Walker") has been a member of the Board since 2014.

16. Defendants Kern, Karsh, Jacobson, Levinsohn, Murphy, and Walker are collectively referred to herein as the "Individual Defendants."

17.     Defendant Parent is a Maryland corporation with its principal executive office located in Hunt Valley, Maryland. Parent is a diversified television broadcast company. Its Class A common stock is listed on the NASDAQ under the symbol "SBGI."

18.     Defendant Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent, which was formed solely for the purpose of consummating the merger of Merger Sub with and into Tribune.

## SUBSTANTIVE ALLEGATIONS

19.     Tribune is a diversified media and entertainment business and one of the largest independent television station owner groups in the United States. Tribune has network affiliations with all of the major over-the-air networks, including ABC, CBS, NBC, Fox, and The CW. Tribune also owns a national general entertainment cable network, WGN America (WGNA), which is available in approximately 80 million households nationally. Tribune also holds a variety of investments in cable and digital assets, including equity investments in Television Food Network, G.P. (TVFN), and CareerBuilder, LLC (CareerBuilder).

20.     Tribune has been profitable for years. Over the past two years, Tribune's total operating revenues have increased approximately 8% and adjusted EBITDA has increased approximately 21%.

21.     According to the Company's most recent 10-K issued prior to the announcement of the Proposed Transaction (on March 1, 2017):

> Our businesses have historically generated strong cash flows from operations. For the three years ended December 31, 2016, our net cash provided by such operating activities totaled $689 million, which includes $530 million of cash distributions received from our equity investments. In addition to the $530 million of cash distributions accounted for within the cash flows provided by operating activities, $191 million of cash distributions from our equity investments were accounted for within the cash flows from investing activities. Our equity investments have historically provided substantial cash distributions annually. These cash flows provide us with the financial flexibility to pursue our growth

> strategies both through organic investments in our existing businesses and through accretive acquisition opportunities, as well as to return capital to our stockholders.
>
> *   *   *
>
> Our senior management team has broad and diverse experience across their respective disciplines, with proven track records of success in the industry. Our organization consists of talented executives with expertise across finance, strategy, operations, regulatory matters and human resources. Our management team has a unified vision for the Company, which includes capitalizing on our current strengths and strategically investing in new initiatives and businesses to generate increased value for our stockholders.

22.     In the Company's May 10, 2017 press release announcing its financial results for the first quarter 2017, Defendant Kern stated that the Company's "financial results were in line with our expectations," and that the Company "expect[ed that] the next three quarters will be strong," with "significant acceleration of retransmission revenues." The Company also announced that it was reaffirming its full year financial guidance for 2017.

23.     Despite the positive results and economic outlook for the Company, the Board agreed to sell Tribune to Sinclair at an inadequate price and through a process that virtually assures that the Merger will be consummated.

24.     For example, the implied per share value of the Merger Consideration, of $43.50 in cash and stock, represents only an 8% premium to Tribune's price per share the day before the announcement of the Proposed Transaction. Moreover, on that day, BWS Financial had a price target of $48.00 per share, or more than 10% higher than the implied per share value of the Merger Consideration.

25.     Following the closing of the Merger, Tribune's current shareholders will only own approximately 17% of the post-Merger entity, significantly diluting their already undervalued interest. "Consequently, former Tribune shareholders will have less influence over the management and policies of Sinclair than they currently have over Tribune." S-4 at 43.

26. The likelihood of a competing bidder emerging to purchase the Company at a higher price is significantly handicapped because the Board agreed to include in the Merger Agreement certain deal protection devices that will prevent alternative acquirors from submitting higher offers for the Company. These include a "No Solicitation" clause, "Fiduciary Out" and "Matching Rights," which, as the S-4 explains, place a "restriction on Tribune's ability to solicit alternative acquisition proposals." The Board also agreed to a termination fee of $135.5 million, which is payable by Tribune to Sinclair in the event that the Individual Defendants decide to terminate the Merger Agreement, including in order to accept an alternative proposal that exceeds that of Sinclair's. Also, at least eight potentially interested parties signed confidentiality agreements with Tribune that may have prevented them from submitting superior offers.

27. Notwithstanding the inadequate Merger Consideration and the onerous deal protection devices, the Merger's consummation is virtually assured because the Board has conditioned the closing of the Merger on a bare majority vote of the Company's common stockholders, of which the largest, Oaktree Capital Management ("Oaktree"), has already entered into a voting and support agreement with Sinclair pursuant to which Oaktree has pledged to vote all of its Tribune common stock – comprising 16.3% ownership of Tribune – in favor of the Merger.

***The S-4's Material Misrepresentations/Omissions***

28. Although the S-4 provides Tribune's stockholders with a summary/overview of the Proposed Transaction, it omits certain critical information that renders portions of the S-4 materially incomplete and/or misleading, in violation of the Securities Act provisions discussed herein. As a result, Tribune's stockholders lack material information necessary to allow them to make an informed decision concerning whether to vote in favor of the Merger.

29. In particular, the S-4 contains materially incomplete and/or misleading information concerning, *inter alia*: the financial analyses performed by Tribune's financial advisors, Moelis & Company ("Moelis") and Guggenheim Securities, LLC ("Guggenheim"), in support of their so-called "fairness opinions" that approved the Merger Consideration, including the projections that the financial advisors relied upon in performing their financial analyses; and the sales process leading to the Merger.

30. The S-4 states that, in performing their financial analyses and arriving at their so-called "fairness opinions," Moelis and Guggenheim relied upon and reviewed certain internal financial information and forecasts (the "Projections") that were provided to them by Tribune and Sinclair and had been prepared by Tribune's and Sinclair's respective management. Moelis reviewed "certain internal information relating to the business, earnings, cash flow, assets, liabilities and prospects of Tribune furnished to Moelis by Tribune, including financial forecasts provided to or discussed with [Moelis] by the management of Tribune," and "certain internal information relating to the business, including financial forecasts of Sinclair, furnished to Moelis by Sinclair." S-4 at 74. Guggenheim reviewed "certain non-public business and financial information regarding Tribune's businesses and prospects . . ., all as prepared and provided to Guggenheim Securities by Tribune's senior management." S-4 at 87.

31. Management's financial projections are considered to be the most important information a stockholder can have when evaluating the proposed consideration in a merger and deciding whether to vote in favor of the merger. Projections are highly material because they enable shareholders to understand the company's intrinsic value and the extent of the market's undervaluation of their company.

32. However, none of Sinclair's Projections are disclosed in the S-4; they are completely omitted. This makes it impossible for Tribune's shareholders to understand and interpret the various financial analyses that incorporated and/or relied upon such Projections, including in valuing Sinclair's shares, which form a component of the Merger Consideration. According to the S-4, such analyses include: Moelis's "Selected Publicly Traded Companies Analysis of Sinclair" (S-4 at 81), which relied on "the two-year average EBITDA for calendar years 2016 and 2017 (estimated) for Sinclair's television broadcasting"; Moelis's "Discounted Cash Flow Analysis of Sinclair" (S-4 at 82), which relied on "financial forecasts and other information and data provided by Sinclair's management for April 2017 through December 2020"; Guggenheim's "Sinclair – Discounted Cash Flow Analysis" (S-4 at 101), which relied on "projected unlevered free cash flows . . . for Sinclair"; Guggenheim's "Sinclair – Selected Publicly Traded Companies Analysis" (S-4 at 101), which relied on "Sinclair's . . . projected / forecasted financial performance" and on "Sinclair's Average EBITDA for CY16A / CY17E"; and Guggenheim's "Illustrative/Hypothetical Tribune Shareholder Value Proposition Analyses" (S-4 at 102-103), which relied on "the financial projections for Sinclair."

33. Also not disclosed are Sinclair's "estimated operating synergies and other combination benefits, dis-synergies and estimated costs to achieve the same" expected to result from the merger, which are defined in the S-4 as the "synergy estimates" or "synergies" and which were "prepared and provided to Guggenheim Securities by Sinclair's senior management and discussed with Tribune's senior management. S-4 at 87. These are material because, *inter alia*, Guggenheim "performed [its] discounted cash flow analyses based on . . . the synergy estimates . . . as furnished to Guggenheim Securities by . . . Sinclair," *id.*, and Guggenheim relied

on the synergy estimates in performing its "Illustrative/Hypothetical Tribune Shareholder Value proposition Analyses," S-4 at 102-103.

34. Although Tribune's Projections for the years ending December 31, 2017 through December 31, 2021 are purportedly summarized on pages 105-109 of the S-4 (the tabulations are included only on page 107 of the S-4 and the rest is discussion and footnotes), those Projections are materially incomplete in that they fail to disclose certain line items that constituted the unlevered free cash flows ("FCF") that Moelis and Guggenheim calculated and used as a basis for their financial analyses of Tribune, such as their discounted cash flow analyses, including the following: (i) cash rights payments; (ii) depreciation and amortization; (iii) capital expenditures; (iv) net working capital; (v) non-cash pension expense (for Guggenheim's FCF calculation); (vi) cash rights amortization; and (vii) a reconciliation of all non-GAAP to GAAP metrics.

35. Without these material line item disclosures, it is impossible for Tribune's shareholders to understand and interpret the various financial analyses that incorporated and/or relied upon such Projections, including in valuing Sinclair's shares, which form a component of the Merger Consideration, including Moelis's and Guggenheim's respective discounted cash flow analyses of Tribune.

36. Given that Moelis and Guggenheim relied upon the Tribune and Sinclair Projections in rendering their so-called "fairness opinions," failure to include the Projections (entirely for Sinclair and with line item disclosures for Tribune) in the S-4 constitutes a material omission and renders the financial analyses misleading.

37. The S-4 also fails to disclose the values of various financial metrics that were used by Moelis in conducting its "Selected Publicly Traded Companies Analysis of Tribune" (S-4 at 76) and "Selected Precedent Transactions Analysis of Tribune" (S-4 at 80), and by

Guggenheim in conducting its "Tribune Change-of Control Financial Analyses—Overall Company" (S-4 at 93), including, *inter alia*: (i) the net present value of spectrum proceeds expected to be received in the third quarter of 2017; (ii) the net present value of the after-tax proceeds of Tribune's minority stake in CareerBuilder; (iii) the net present value of non-operating real estate planned to be sold in 2017, 2018 and 2019; (iv) the net present value of the after-tax, incremental cash benefit associated with below-market FOX affiliate fees, and (v) the after-tax value of certain other assets, including Tribune's 5% stake in the Chicago Cubs.

38. In addition to the above, the S-4 fails to disclose the following material information:

   a. The S-4 (at page 62) states that Tribune's financial advisors reviewed with the Tribune Board an "oral offer for four of Tribune's stations that had been received from Bidder C" and which "the Tribune Board did not consider . . . to be competitive" with proposals from Sinclair and Bidder B, but it does not disclose the details of such oral offer.

   b. The S-4 (at page 104) states that Guggenheim had been previously engaged during the past two years by Tribune to provide financial advisory services, but it does not disclose the amount of compensation received for such past services.

   c. The S-4 fails to disclose whether any confidentiality agreements executed by Tribune and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

   d. The S-4 fails to disclose the timing and nature of any communications regarding future employment and/or directorship of Tribune's officers and directors, including who participated in all such communications, which could have led to potential conflicts of interest during the Merger negotiations. This is particularly important given that Tribune and Sinclair are engaged in overlapping businesses.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Tribune (the "Class"). Excluded from the

Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

40. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of June 23, 2017, there were 87,179,934 shares of Tribune Class A common stock outstanding, and there were 5,605 shares of Tribune Class B common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the S-4 as currently composed.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy;

g. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

**CAUSES OF ACTION**

**COUNT I**

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder (Against All Defendants)**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

44. Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the [Securities and Exchange] Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or

approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." 17 C.F.R. § 240.14a-9(b).

45. As discussed herein, the S-4 misrepresented and/or omitted material facts concerning, *inter alia*: the financial analyses performed by Tribune's financial advisors in support of their so-called "fairness opinions" that approved the Merger Consideration, including the projections that the financial advisors relied upon in performing their financial analyses; and the sales process leading to the Merger.

46. Defendants prepared, reviewed, filed and disseminated the false and misleading S-4 to Tribune's shareholders. In doing so, Defendants knew or recklessly disregarded that the S-4 failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. The omissions and incomplete and misleading statements in the S-4 are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

48. By virtue of their positions within the Company and/or roles in the process and in the preparation of the S-4, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing the financial advisors' complete financial analyses purportedly summarized in the S-4.

49. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

50. Tribune is deemed negligent as a result of the Individual Defendants' negligence

in preparing and reviewing the Proxy.

51. Sinclair (defined above as Parent and Merger Sub), via its/their officers and/or directors, also prepared and/or reviewed the Proxy, which used Sinclair's name to solicit votes from Tribune's shareholders. Sinclair also provided its management projections to Tribune's financial advisors in connection with their financial analyses.

52. Defendants knew that Plaintiff and the other members of the Class would rely upon the S-4 in determining whether to vote in favor of the Merger.

53. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14d-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to vote in favor of the Merger.

54. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### Claim for Violations of Section 20(a) of the Exchange Act (Against the Individual Defendants)

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of Tribune within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tribune, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants were provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The S-4 contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the S-4.

59. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

61. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

E. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

F. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 17, 2017

**RIGRODSKY & LONG, P.A.**

/s/ *Brian D. Long*
Brian D. Long (#4347)
Gina M. Serra (#5387)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel: (302) 295-5310
Fax: (302) 654-7530
Email: bdl@rl-legal.com
gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WOLF POPPER LLP**
Carl L. Stine
Robert S. Plosky
845 Third Avenue
New York, New York 10022
Tel: 212-759-4600
Fax: 212-486-2093
Email: cstine@wolfpopper.com
rplosky@wolfpopper.com